UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

             - v -                          :          **MEMORANDUM DECISION**

ANGEL TEJEDA,                          :          11 Cr. 1015 (DC)

                Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          COZEN O'CONNOR
                Attorneys for Defendant
                    By:    J. Bruce Maffeo, Esq.
                45 Broadway, 16th Floor
                New York, NY  10006

                AUDREY STRAUSS, Esq.
                United States Attorney for the
                Southern District of New York
                    By:    Danielle M. Kudla, Esq.
                          Assistant United States Attorney
                One Saint Andrew's Plaza
                New York, NY  10007

CHIN, Circuit Judge:

On May 14, 2014, defendant Angel Tejeda pleaded guilty to conspiring to commit Hobbs Act robbery and to using, carrying, and brandishing a firearm during and in relation to a crime of violence.  On July 21, 2015, I sentenced him to a total term of imprisonment of 324 months.  Mr. Tejeda now moves to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act (the

"FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  He contends that his asthma

and obesity place him "at a heightened risk for severe illness if he contracts COVID-19,"

Def. Mem. at 3, and that these conditions, combined with the risk of contracting

COVID-19 in prison, constitute "extraordinary and compelling" circumstances

warranting compassionate release.  *Id.* at 6.   He further contends that the sentencing

factors set forth in 18 U.S.C. § 3553(a) weigh in favor of release.

For the reasons set forth below, the motion is denied.

## *BACKGROUND*

**1.**     *Tejeda's Crimes*

Mr. Tejeda and his co-conspirators participated in a conspiracy to rob

narcotics traffickers in the Bronx and Manhattan from 2004 until 2009.  Presentence

Investigation Report ("PSR") ¶¶ 2, 12.  Mr. Tejeda's role in the conspiracy was to

organize the robbery crews, drive the crews to the locations where narcotics were sold,

and, on occasion, to supply the crews with firearms.  *Id.* ¶¶ 12-13.  During one such

robbery in November 2007, members of Mr. Tejeda's crew beat a victim so severely that

the victim died the following day from his injuries.  *Id.* ¶¶ 18-19.  Mr. Tejeda and his

crews continued to commit other robberies involving gun violence following this

incident.  *Id.* ¶ 20.  In total, Mr. Tejeda committed at least ten robberies.  *Id.* ¶ 21.

### 2.    *Mr. Tejeda's Guilty Plea and Sentencing*

Mr. Tejeda and three co-conspirators were indicted on November 29, 2011

for conspiring to commit Hobbs Act robbery and related crimes.  Dkt. No. 2.  On May

14, 2014, Mr. Tejeda pleaded guilty to one count of conspiracy to commit Hobbs Act

robbery in violation of 18 U.S.C. § 1951, and one count of using, carrying, and

brandishing a firearm during and in relation to a crime of violence, in violation of 18

U.S.C. § 924(c)(1)(A)(ii).  Dkt. No. 97; Gov't Opp. at 2.

I sentenced Mr. Tejeda on July 21, 2015.  I determined that the total offense

level was 41 and the Criminal History Category was I, resulting in an advisory

Guidelines range of 324 to 405 months.  Sent. Tr. at 4-5.  The statutory maximum term of

incarceration for the Hobbs Act conspiracy count, however, was 240 months, resulting

in a stipulated Guideline of 324 months' imprisonment.  I described Mr. Tejeda's

conduct as "extremely troubling" and observed that he had engaged in at least eleven

robberies or attempted robberies over the course of five years, many of which involved

violence, and one of which had resulted in a man being "literally beaten to death."  Sent.

Tr. at 10.  After noting that I was inclined to go even higher than the stipulated

Guideline given the nature of Mr. Tejeda's crimes, I deferred to the parties' agreement

and sentenced Mr. Tejeda to 324 months' imprisonment, the stipulated Guideline term.

**3.**     *Tejeda's Request for Compassionate Release*

On April 10, 2020, Mr. Tejeda made a request to the Warden at FCI Fort

Dix, where he is incarcerated, for compassionate release.  Gov't Opp. at 2; Def. Mem. at

1.  The Warden denied his request sometime in May, and Mr. Tejeda filed the instant

motion on June 23, 2020.  Dkt. No. 170.[1]  The government opposed the motion by letter

filed July 20, 2020.  Gov't Opp. at 1.  Mr. Tejeda opted not to file a reply.  Dkt. No. 178.

Mr. Tejeda, now 46 years-old, has an expected release date of July 17,

2036.  Gov't Opp. at 2.

## DISCUSSION

**1.**     *Applicable Law*

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the FSA, a court may

reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the

"BOP") or the defendant.  *See United States v. Gil*, No. 90 Cr. 306 (KMW), 2020 WL

2611872, at *1 (S.D.N.Y. May 22, 2020); *United States v. Patterson*, No. 17 Cr. 118-6 (KPF),

2020 WL 2571044, at *2 (S.D.N.Y. May 21, 2020).  A defendant may move for a reduction

---

[1]     There is a discrepancy in the parties' submissions regarding the date Mr. Tejeda's
request was denied by the Warden.  *See* Def. Mem. at 1 ("[T]he Warden denied his request on
May 5"); Gov't Opp. at 2 ("On May 26, 2020, the defendant's request was denied.").  As will be
discussed *infra*, I need not resolve this discrepancy because for purposes of this motion, I
assume that Mr. Tejeda is eligible for compassionate release, including that he properly
exhausted his administrative remedies.

under the statute only upon exhausting administrative remedies within the BOP.  *See* 18

U.S.C. § 3582(c)(1)(A).

A court may reduce a sentence if it finds, "after considering the factors set

forth in section 3553(a) to the extent they are applicable," that "extraordinary and

compelling reasons warrant such a reduction" and that the reduction "is consistent with

applicable policy statements issued by the Sentencing Commission."  18 U.S.C. §

3582(c)(1)(A).[2]  In addition, in accordance with Sentencing Commission guidance, the

court may not reduce a sentence unless it determines that the "defendant is not a danger

to the safety of any other person or the community."  *Id*. (quoting U.S.S.G. § 1B1.13(2));

*see Patterson*, 2020 WL 2571044, at *2.

The existence of "extraordinary and compelling reasons" for a reduction

does not mean that a district court *must* release the defendant.  *See United States v.*

*Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020).  Rather, section 3582(c)(1)(A) provides

that a court "may" reduce a sentence if "extraordinary and compelling reasons" are

shown, and thus a district court has the discretion to grant or deny a request for

compassionate release even if a defendant is otherwise eligible.  *See United States v.*

*Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is

not required to reduce a sentence on compassionate release grounds, even if a prisoner

---

[2]    The court may also reduce a sentence where a defendant is at least 70 years old and has
served at least 30 years in prison.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).  That provision is not
applicable here, as Mr. Tejeda is not 70 years old and has not served 30 years.

qualifies for such reduction because of his medical condition . . . .").  If a defendant

qualifies for a reduction, the court must decide whether to grant the reduction by

weighing the factors set forth in section 3553(a), to the extent they are applicable.  *See id.*

at *2.  These include:  the nature and circumstances of the offense; the defendant's

history and characteristics; the need for the sentence to reflect the seriousness of the

offense, to promote respect for the law, to provide just punishment for the offense, to

afford adequate deterrence to criminal conduct, and to provide the defendant with

needed medical care; and the need to avoid unwarranted disparities in sentences.  *See*

18 U.S.C. § 3553(a).

On a motion for compassionate release, the defendant bears the burden of

showing that a reduction is warranted.  *See Patterson*, 2020 WL 2571044, at *2; *Ebbers*, 432

F. Supp. 3d at 426-27; *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)

("A party with an affirmative goal and presumptive access to proof on a given issue

normally has the burden of proof as to that issue.")

**2.    *Application***

I assume that Mr. Tejeda is eligible for compassionate release.  As a

threshold matter, although the parties disagree as to the date, they agree that Mr.

Tejeda's request was denied by the Warden, and the government does not contend that

there exists any remaining administrative remedy available to Mr. Tejeda within the

BOP that he has failed to exhaust.  He is also in what would be considered the

"vulnerable" population; although the government does not agree that Mr. Tejeda's

asthma makes him particularly vulnerable, *see* Gov't Opp. at 6 n.11, it does

acknowledge that Mr. Tejeda's BMI of 30.5 places him at a higher risk of a severe

outcome if he contracts COVID-19, *see* Gov't Opp. at 6.

The parties dispute the degree of risk Mr. Tejeda faces from COVID-19

because he is in a prison facility.  The government reports that because Fort Dix is

divided into two separate facilities, although there have been 40 reported cases of

inmates infected at Fort-Dix, none of those cases occurred at Fort Dix-Low, the facility

where Mr. Tejeda is housed.  Gov't Opp. at 3.  Indeed, the government represents that

as of the filing of its opposition on July 20, 2020, Fort Dix-Low had zero reported cases,

and it notes that the BOP is taking concrete steps generally to address the pandemic.

Gov't Opp. at 3.  Mr. Tejeda contends, however, that the number of reported cases

"likely understates the scale of the crisis" due to a lack of testing.  Def. Mem. at 4.

Mr. Tejeda likely faces less of a risk of contracting COVID-19 in his home

than in a prison facility.  I need not resolve this factual dispute, however, for even

assuming Mr. Tejeda qualifies for a sentence reduction because he has established

extraordinary and compelling circumstances, I conclude that the section 3553(a) factors

weigh against granting compassionate release.

First, the nature and seriousness of the offense weigh heavily against

compassionate release.  Mr. Tejeda participated in at least ten robberies over the course

of multiple years, and he continued to participate in these violent crimes even after one such incident resulted in a victim being "literally beaten to death." Sent. Tr. at 10.  I agree with the government's characterization of Mr. Tejeda's conduct as "not an isolated incident, but rather a pattern of violent behavior, often involving firearms, that put many in the community at risk." Def. Opp. at 6.

Second, granting Mr. Tejeda's motion would result in an approximately sixteen-year reduction to Mr. Tejeda's original sentence.  Given the seriousness of his offense conduct, and the extent to which it put the safety of others in the community at risk, I find that such a sentence reduction would undermine respect for the law and the need for a just sentence, and the sentence I imposed would lose much of its deterrent effect.

Third, given Mr. Tejeda's "pattern of violent behavior," Def. Mem. at 6, which continued even after it led to a man's death, I am not persuaded that Mr. Tejeda no longer presents a threat to the public.

8

*CONCLUSION*

For the reasons set forth above, Mr. Tejeda's motion for compassionate

release is DENIED.

SO ORDERED.

Dated:      New York, New York
            September 16, 2020


                                    s/Denny Chin_____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting by Designation